IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| ROYAL AGMBR LLC, a Louisiana limited liability company, ANDREW HUNTER HARMAN, an individual, JOHN DAVID SULLIVAN, an individual, MATTHEW A. BRANDMAN, an individual, REGAL RUSSELL PORTER, II, an individual. |  |
|      Plaintiffs, | CASE NO.: 8:23-cv-01117 |
| v. |  |
| AEROVANTI, INC., a Delaware for-profit corporation, AEROVANTI AVIATION, LLC, a Delaware limited liability company, AEROVANTI AIRCRAFT, LLC, a Delaware limited liability company, AEROVANTI CAPITAL, LLC, a Delaware limited liability company, AEROVANTI MAINTENANCE, LLC, a Delaware limited liability company, AEROVANTI HANGAR, LLC, a Maryland limited liability company, AEROVANTI HANGAR, LLC, a Florida limited liability company, AEROVANTI BROKERAGE, INC., a Florida for-profit corporation, TOMBSTONE HOLDINGS, LLC, a Delaware limited liability company, BENJAMIN RICKETTS, an individual, ROBERT DE POL, an individual, PATRICK TORMAY BRITTON-HARR, an individual. |  |
|      Defendants. |  |

## <u>VERIFIED COMPLAINT</u>

Plaintiffs, ROYAL AGMBR LLC, a Louisiana limited liability company, ANDREW HUNTER HARMAN, an individual, JOHN DAVID SULLIVAN, an individual, MATTHEW A. BRANDMAN, an individual, and REGAL RUSSELL PORTER, II, an individual (collectively, "Plaintiffs"), hereby sue Defendants, AEROVANTI, INC., a Delaware for-profit corporation, AEROVANTI AVIATION, LLC, a Delaware limited liability company, AEROVANTI AIRCRAFT, LLC, a Delaware limited liability company, AEROVANTI CAPITAL, LLC, a Delaware limited liability company, AEROVANTI MAINTENANCE, LLC, a Delaware limited liability company, AEROVANTI HANGAR, LLC, a Maryland limited liability company, AEROVANTI HANGAR, LLC, a Florida limited liability company, AEROVANTI BROKERAGE, INC., a Florida for-profit corporation, TOMBSTONE HOLDINGS, LLC, a Delaware limited liability company, BENJAMIN RICKETTS, an individual,  ROBERT DE POL, an individual, and PATRICK TORMAY BRITTON-HARR, an individual (collectively "Defendants") and allege as follows:

## <u>PARTIES</u>

1.      Plaintiff, Royal AGMBR LLC (hereinafter, "ROYAL AGMBR"), is, and was at all relevant times hereto, a Louisiana limited liability company, with its principal place of business located in Baton Rouge, Louisiana.

2.    Plaintiff, Andrew Hunter Harman (hereinafter, "HARMAN"), is an individual, and is, and was at all relevant times hereto, a resident of Walton County, Florida, and is otherwise *sui juris*.

3.    Plaintiff, John David "JD" Sullivan (hereinafter, "SULLIVAN"), is an individual, and is, and was at all relevant times hereto, a resident of Walton County, Florida, and is otherwise *sui juris*.

4.    Plaintiff, Matthew A. Brandman (hereinafter, "BRANDMAN"), is an individual, and is, and was at all relevant times hereto, a resident of Walton County, Florida, and is otherwise *sui juris*.

5.    Plaintiff, Regal Russell Porter, II (hereinafter, "PORTER"), is an individual, and is, and was at all relevant times hereto, a resident of Walton County, Florida, and is otherwise *sui juris*.

6.    Defendant, AeroVanti, Inc. (hereinafter, "AEROVANTI"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401, and with its headquarters located in Sarasota, Florida.[1] Despite AEROVANTI having its principal place of business address located in Annapolis, Maryland, AEROVANTI is, and was at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Maryland. In like manner, despite AEROVANTI being, and at all relevant times hereto having been, headquartered in the State of Florida, AEROVANTI is, and was

---

[1] https://www.aerovanti.com/aerovanti-club-announces-up-to-100m-aircraft-funding-vehicle/

at all times relevant hereto, not registered as a foreign corporation authorized to conduct business in the State of Florida.

7.      Defendant, AeroVanti Aviation, LLC (hereinafter, "AEROVANTI AVIATION"), is, and was at all relevant times hereto, a defunct limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401. AEROVANTI AVIATION currently remains, and at all relevant times hereto having remained, administratively dissolved or otherwise not in good standing with the State of Delaware Division of Corporations.

8.      Defendant, AeroVanti Aircraft LLC (hereinafter, "AEROVANTI AIRCRAFT"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

9.      Defendant, AeroVanti Capital, LLC (hereinafter, "AEROVANTI CAPITAL"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

10.      Defendant, AeroVanti Maintenance, LLC (hereinafter, "AEROVANTI MAINTENANCE"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

11.    Defendant, AeroVanti Hangar, LLC (hereinafter, "AEROVANTI HANGAR-MD"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Maryland, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

12.    Defendant, AeroVanti Hangar, LLC (hereinafter, "AEROVANTI HANGAR-FL"), is, and was at all relevant times hereto, a limited liability company organized and existing under the laws of Florida, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

13.    Defendant, AeroVanti Brokerage, Inc. (hereinafter, "AEROVANTI BROKERAGE"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Florida, with its principal place of business address located at 8191 N. Tamiami Trail, Suite 104, Sarasota, Florida 34243.

14.    Defendant, Tombstone Holdings, LLC d/b/a Tombstone Holdings, Inc. and/or Tombstone Holdings, LLC (collectively hereinafter, "TOMBSTONE HOLDINGS"), is, and was at all relevant times hereto, a corporation organized and existing under the laws of Delaware, with its principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

15.    Defendant, Patrick Tormay Britton-Harr (hereinafter, "BRITTON-HARR"), is an individual, and is, and was at all relevant times hereto, a founding member, corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL;

AEROVANTI BROKERAGE; and TOMBSTONE HOLDINGS, and is, upon information and belief, a resident of Sarasota County, Florida, and is otherwise *sui juris*.

16.    Defendant, Robert De Pol (hereinafter, "DE POL"), is an individual, and is, and was at all relevant times hereto, a corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL; and AEROVANTI BROKERAGE, and is, upon information and belief, a resident of Manatee County, Florida, and is otherwise *sui juris*.

17.    Defendant, Benjamin Ricketts (hereinafter, "RICKETTS"), is an individual, and is, and was at all relevant times hereto, a corporate officer, director, and/or principal of: AEROVANTI; AEROVANTI AVIATION; AEROVANTI AIRCRAFT; AEROVANTI CAPITAL; AEROVANTI MAINTENANCE; AEROVANTI HANGAR-MD; AEROVANTI HANGAR-FL; and AEROVANTI BROKERAGE, and is, upon information and belief, a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

18.    Defendants, AEROVANTI AVIATION, AEROVANTI AIRCRAFT, AEROVANTI CAPITAL, AEROVANTI MAINTENANCE, AEROVANTI HANGAR-MD, AEROVANTI HANGAR-FL, AEROVANTI BROKERAGE, and TOMBSTONE HOLDINGS are sometimes collectively referred to herein as the "ALTER-EGO DEFENDANTS".

## JURISDICTION AND VENUE

19.    This Court has general and specific jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), (b) and (c), as Defendants operated, conducted, engaged in, or carried on a business or business venture(s) in this District; engaged in substantial and not isolated business activities in this District; and committed tortious acts within this District, each tortious act being specifically alleged herein.

21.    All conditions precedent to this filing of this suit have been performed or have occurred.

## GENERAL ALLEGATIONS

22.    This action is the result of a calculated and continuing scheme undertaken by Defendant, BRITTON-HARR, and his network of affiliated companies to sell private aviation memberships and otherwise defraud unsuspecting members out of their money.

23.    Defendant, BRITTON-HARR, through Defendant, AEROVANTI, and its network of sham companies/ALTER-EGO DEFENDANTS, advertise and promote private aviation membership(s) under the guise of a tiered membership-based platform.

24.     Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, solicit potential new members to purchase an individual, family, corporate, or "top gun" membership to "AeroVanti's Elite Air Club".

25.     In their representations to potential new members, including Plaintiffs, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, typically embellish the business stature of Defendant, AEROVANTI, by exaggerating the rapid growth of new members, the number of aircrafts in its "fleet", and the significant amount of investor led funding received to support expansion and allow Defendant, AEROVANTI, to rapidly scale in order to meet customer demand. [2]

26.     Notably, in their representations to potential new members, including Plaintiffs, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, promoted and advertised that more than one hundred million dollars ($100,000,000.00)(inclusive of a Series A) was raised for the purpose of allowing a "significant fleet expansion" in order to "keep its member-to-aircraft ratio lower than the industry average without sacrificing any of the luxury one expects with private travel". [3]

---

[2]     https://www.aerovanti.com/aerovanti-names-former-piaggio-america-chief-executive-paolo-ferreri-as-interim-coo/) (March 2, 2023).

[3]     https://www.aerovanti.com/aerovanti-club-announces-up-to-100m-aircraft-funding-vehicle/

27. New members, including Plaintiffs, relied on the representations made by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, in purchasing an individual, family, corporate, or "top gun" membership in AeroVanti's Elite Air Club, only to then discover that the representations made to new members, including Plaintiffs, were nothing more than a mirage.

28. To that end, despite representations by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS to the contrary, the significant number of aircrafts being maintained in the "fleet" of Defendant, AEROVANTI, was actually comprised of no more than three (3) aircrafts deemed to be airworthy.

29. Moreover, Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

30. Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, represented to potential new members, including Plaintiffs, that each respective "Top Gun" Membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" Membership program amount of three million dollars ($3,000,000.00).

31.    Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, further represented to potential new members, including Plaintiffs, that upon receipt of the total "Top Gun" Membership amount of three million dollars ($3,000,000.00), the funds would be used for the express and limited purposes of acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft for use by the membership unitholders of each respective "Top Gun" Membership.

32.    Conversely, upon purchasing a "Top Gun" Membership in reliance on the representations by Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, new members, including Plaintiffs, soon discovered that the "host of benefits" associated with the "Top Gun" Membership were too an illusion.

33.    To that end, despite Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, having received a total of fifteen million dollars ($15,000,000.00) from the individual membership unitholders that comprised the five (5) known "Top Gun" Memberships, the vast majority, if not all, of the funds received were used for an improper purpose at the direction of Defendant, BRITTON-HARR.

34.    Upon information and belief, as a result of the funds received having been used for an improper purpose at the direction of Defendant, BRITTON-HARR, all five (5) of the specified Piaggio P. 180 Avanti Aircrafts designated for the five (5)

known "Top Gun" Memberships, have either since been repossessed or deemed not to be airworthy and in total disrepair.

35.    However, despite having defrauded hundreds of members, and further refusing to refund members the previously tendered membership fee,  Defendant, AEROVANTI, through its agents and network of sham companies/ALTER-EGO DEFENDANTS, continue to expend member funds on partnership deals with professional sports organizations and on sponsorships for professional sporting events, all in an effort to further embellish the business stature and company health of Defendant, AEROVANTI, and by way of gross misrepresentations, lure unsuspecting new members to purchase memberships in furtherance of the calculated and continuing scheme by Defendant, AEROVANTI.

36.    Prior to instituting this action and based on the discovery of the fraudulent misrepresentations made on behalf of Defendant, AEROVANTI, its agents and network of sham companies/ALTER-EGO DEFENDANTS, Plaintiffs requested for a rescission of their respective AeroVanti Membership Agreements and return of the amounts previously tendered by Plaintiffs in connection therewith, to no avail.

37.    All conditions precedent to the filing and maintenance of the causes of actions asserted herein have occurred, have been waived, or have been discharged or otherwise satisfied.

38.    PLAINTIFFS have retained the undersigned firm of the WLG Firm, PLLC and have incurred attorneys' fees and costs for which they are entitled to be reimbursed from Defendants as provided by Florida Statutes and Florida case law.

## <u>COUNT I - PIERCING THE CORPORATE VEIL</u>[4]
## (PLAINTIFFS AGAINST ALTER-EGO DEFENDANTS)

Plaintiffs seek a declaratory judgment determining that Defendants, AEROVANTI AVIATION, AEROVANTI AIRCRAFT, AEROVANTI CAPITAL, AEROVANTI MAINTENANCE, AEROVANTI HANGAR-MD, AEROVANTI HANGAR-FL, AEROVANTI BROKERAGE, and TOMBSTONE HOLDINGS (collectively, the "ALTER-EGO DEFENDANTS") are the alter-ego of Defendant, AEROVANTI, and allege that:

39.     Plaintiffs re-allege and incorporate by reference paragraphs 1-38 as if fully set forth herein.

40.     Upon information and belief, Defendant, BRITTON-HARR, has developed an intricate web of deceit through the creation of interrelated entities that are each alter egos of one another.

41.     Upon information and belief, Defendant, BRITTON-HARR, uses the ALTER-EGO DEFENDANTS to insulate both Defendant, AEROVANTI, and Defendant, BRITTON-HARR, from any such liability.

42.     Upon information and belief, Defendant, BRITTON-HARR, owns, operates, dominates, and controls the ALTER-EGO DEFENDANTS to such an extent that they have no corporate existence independent of Defendant, AEROVANTI, and Defendant, BRITTON-HARR, their alter-ego.

---

[4] *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla. 1984).

43.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS have common ownership, as Defendant, BRITTON-HARR, solely owns or maintains an ownership interest in Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

44.    At all times relevant hereto, Defendant, BRITTON-HARR, caused the incorporation and/or formation of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS, as Defendant, BRITTON-HARR, is the authorized signatory on all of the state filings for Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

45.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS have common directors or officers, as Defendant, BRITTON-HARR, is a corporate officer, director, and/or principal of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

46.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share principal place of business address located at 2 Compromise Street, Annapolis, Maryland 21401.

47.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same email address domain of "@aerovanti.com".

48.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same website domain of "www.aerovanti.com".

49.    At all times relevant hereto, Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS share the same company logo, which depicts a golden goose with company name "AEROVANTI" underneath.

50.    At all times relevant hereto, the daily business operations of Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS are not kept separate.

51.    At all times material hereto, the ALTER-EGO DEFENDANTS do not observe corporate formalities such as keeping separate books and records, holding shareholder meetings).

52.    At all times relevant hereto, there is a lack of any independent business derived from the ALTER-EGO DEFENDANTS except that of which is inextricably intertwined with or handed down from Defendant, AEROVANTI, and/or Defendant, BRITTON HARR.

53.    At all times relevant hereto, funds and assets are commingled between Defendant, AEROVANTI, and the ALTER-EGO DEFENDANTS.

54.    As set forth herein, Defendant, BRITTON-HARR, operates, dominates, and controls Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity to such an extent that the ALTER-EGO DEFENDANTS' existence was in effect, non-existent.

55.    Defendant, BRITTON-HARR, as set forth herein, used the corporate form of the ALTER-EGO DEFENDANTS for an improper purpose and as mere devices to engage in improper conduct to obtain a financial benefit to the detriment of Plaintiffs.

56.    Moreover, upon information and belief, the ALTER-EGO DEFENDANTS, individually, likely do not maintain sufficient assets to pay any such monetary judgment award in favor of Plaintiffs.

57.    All things considered, allowing the corporate form of the ALTER-EGO DEFENDANTS to insulate Defendant, BRITTON-HARR, and Defendant, AEROVANTI, in any way from liability would sanction an injustice against Plaintiffs.

**WHEREFORE**, Plaintiffs, demand a declaratory judgment that the ALTER-EGO DEFENDANTS  are alter-egos of Defendant, AEROVANTI, and Defendant, BRITTON-HARR, respectively, and therefore declare the ALTER-EGO DEFENDANTS, Defendant, AEROVANTI, and Defendant, BRITTON-HARR, jointly and severally liable for any such monetary judgment awarded against the ALTER-EGO DEFENDANTS, Defendant, AEROVANTI, and Defendant, BRITTON-HARR and in favor of Plaintiffs, for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT II - BREACH OF CONTRACT[5]
## (ROYAL AGMBR against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, ROYAL AGMBR, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

58.    This is an action for damages that are within the jurisdiction of this Court.

---

[5] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

59.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

60.    On May 25, 2022, Plaintiff, ROYAL AGMBR, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Royal AGMBR Top Gun Agreement*"); a copy of the AeroVanti Royal AGMBR Top Gun Agreement is attached hereto as Exhibit "1".

61.    On May 25, 2022, AeroVanti Royal AGMBR Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

62.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Royal AGMBR Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

63.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of three million dollars ($3,000,000.00).

64.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders.

65.    In the instant matter, Plaintiff, ROYAL AGMBR, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "90 BC LLC".

66.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, and in consideration of Plaintiff, ROYAL AGMBR, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "90 BC LLC" Top Gun Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Royal AGMBR Top Gun Agreement.

67.    In connection with the "90 BC LLC" Top Gun Membership, and in accordance with the AeroVanti Royal AGMBR Top Gun Agreement, a total of three million dollars ($3,000,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "90 BC LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around May 27, 2022.

68.    In order to induce Plaintiff, ROYAL AGMBR, and other "90 BC LLC" members, into purchasing the respective membership unit(s) for the "90 BC LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, ROYAL AGMBR, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

69.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, ROYAL AGMBR, and/or any other 90 BC LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, ROYAL AGMBR, and/or any other "90 BC LLC" members, the respective title documentation for the Aircraft, as specified herein.

70.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, ROYAL AGMBR, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "90 BC LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, ROYAL

AGMBR, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

71.    In connection with the AeroVanti Royal AGMBR Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

72.    In connection with the AeroVanti Royal AGMBR Top Gun Agreement, an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021 between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Exclusive Use Aircraft Lease and Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

73.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, the funds being held in the respective escrow account on behalf of "90 BC LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, ROYAL AGMBR, and/or other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

74.    In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, ROYAL AGMBR, and/or other "90 BC LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, ROYAL AGMBR, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

75.    In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, ROYAL AGMBR, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC"

to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

76.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "90 BC LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

77.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" other than as expressly stated and agreed to in the AeroVanti Royal AGMBR Top Gun Agreement.

78.    Conversely, during the period of May 27, 2022, through and including June 13, 2022, a total span of 17 calendar days, the total amount of three million dollars ($3,000,000.00) that was being held in the respective escrow account on behalf of "90 BC LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

79.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to Arcadia Capital Management, LLC by Defendant,

AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement for the specified Aircraft.

80.     Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, ROYAL AGMBR, to enter into the AeroVanti Royal AGMBR Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

81.     Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

82.     During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant,

AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

83.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, ROYAL AGMBR, to enter into the AeroVanti Royal AGMBR Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

84.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, ROYAL AGMBR, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, ROYAL AGMBR, nor any other "90 BC LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

85.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Royal AGMBR Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of acquiring the specified Aircraft.

86.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Royal AGMBR Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

87.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Royal AGMBR Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, ROYAL AGMBR, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

88.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Royal AGMBR Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

89.    Pursuant to the terms and conditions of the AeroVanti Royal AGMBR Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Royal AGMBR Top Gun

Agreement, Plaintiff, ROYAL AGMBR, made a written request to the Escrow Agent to deliver to Plaintiff, ROYAL AGMBR, the respective aircraft title documentation for the specified Aircraft, to no avail.

90.    Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Royal AGMBR Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

91.    Moreover, Plaintiff, ROYAL AGMBR, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "7".

92.    As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Royal AGMBR Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, ROYAL AGMBR, has suffered damages, and continues to suffer damages.

93.    Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, ROYAL AGMBR, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, ROYAL AGMBR, LLC, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

**COUNT III - FRAUDULENT MISREPRESENTATION[6]**

**(ROYAL AGMBR against AEROVANTI,
ALTER-EGO DEFENDANTS and BRITTON-HARR)**

Plaintiff, ROYAL AGMBR, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

94.    This is an action for damages that are within the jurisdiction of this court.

95.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

96.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

97.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "90 BC LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing

---

[6] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Royal AGMBR Top Gun Agreement.

98.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "90 BC LLC" were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, ROYAL AGMBR, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

99.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

100.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Royal AGMBR Membership Agreement.

101. Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Royal AGMBR Membership Agreement.

102. The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

103. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Royal AGMBR Top Gun Agreement.

104. The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Royal AGMBR Membership Agreement.

105. If Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express

and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Royal AGMBR Membership Agreement.

106. As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, ROYAL AGMBR, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, ROYAL AGMBR, LLC, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT IV - RESCISSION[7]

### (ROYAL AGMBR against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, ROYAL AGMBR, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, and alleges that:

---

[7] *Perna v. Am. Campus Cmtys., Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

107. This is an action for damages that are within the jurisdiction of this court.

108. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

109. On May 25, 2022, Plaintiff, ROYAL AGMBR, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Royal AGMBR Top Gun Agreement"); a copy of the AeroVanti Royal AGMBR Top Gun Agreement is attached hereto as Exhibit "1".

110. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, ROYAL AGMBR, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

111. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

112.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Royal AGMBR Membership Agreement.

113.   Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Royal AGMBR Membership Agreement.

114.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Royal AGMBR Top Gun Agreement.

115.   If  Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty

thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Royal AGMBR Membership Agreement.

116.   Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

117.   As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

118.   Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Royal AGMBR Membership Agreement.

119.   In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-

EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Royal AGMBR Membership Agreement.

120.    However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Royal AGMBR Membership Agreement.

121.    Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Royal AGMBR Membership Agreement.

**WHEREFORE**, Plaintiff, ROYAL AGMBR, LLC, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Royal AGMBR Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from May 25, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT V - BREACH OF CONTRACT[8]
### (HARMAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, HARMAN, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

122.    This is an action for damages that are within the jurisdiction of this court.

123.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

124.    On May 27, 2022, Plaintiff, HARMAN, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Harman Top Gun Agreement*"); a copy of the AeroVanti Harman Top Gun Agreement is attached hereto as Exhibit "2".

125.    On May 27, 2022, AeroVanti Harman Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

126.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Harman Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

---

[8] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

127.    Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of three million dollars ($3,000,000.00).

128.    Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders.

129.    In the instant matter, Plaintiff, HARMAN, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "90 BC LLC".

130.    Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, and in consideration of Plaintiff, HARMAN, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "90 BC LLC" Top Gun Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Harman Top Gun Agreement.

131.   In connection with the "90 BC LLC" Top Gun Membership, and in accordance with the AeroVanti Harman Top Gun Agreement, a total of three million dollars ($3,000,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "90 BC LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around May 27, 2022.

132.   In order to induce Plaintiff, HARMAN, and other "90 BC LLC" members, into purchasing the respective membership unit(s) for the "90 BC LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, HARMAN, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

133.   Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Harman Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, HARMAN, and/or any other 90 BC LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, HARMAN, and/or any other "90 BC LLC" members, the respective title documentation for the Aircraft, as specified herein.

134.   Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, HARMAN, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "90 BC LLC" were to be utilized for the express and

limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, HARMAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

135. In connection with the AeroVanti Harman Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

136. In connection with the AeroVanti Harman Top Gun Agreement, an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Exclusive Use Aircraft Lease and Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

137. Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, the funds being held in the respective escrow account on behalf of "90 BC LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity

process; and/or (ii) to pay for Plaintiff, HARMAN, and/or other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

138.   In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, HARMAN, and/or other "90 BC LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Harman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, HARMAN, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

139.   In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Harman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, HARMAN, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the

Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

140.    Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "90 BC LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

141.    Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" other than as expressly stated and agreed to in the AeroVanti Harman Top Gun Agreement.

142.    Conversely, during the period of May 27, 2022, through and including June 13, 2022, a total span of 17 calendar days, the total amount of three million dollars ($3,000,000.00) that was being held in the respective escrow account on behalf of "90 BC LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

143.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds

being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to Arcadia Capital Management, LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement for the specified Aircraft.

144.   Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, HARMAN, to enter into the AeroVanti Harman Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

145.   Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

146.   During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

147.   Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, HARMAN, to enter into the AeroVanti Harman Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

148.   During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, HARMAN, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, HARMAN,

nor any other "90 BC LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

149.  Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Harman Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of acquiring the specified Aircraft.

150.  Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Harman Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

151.  Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Harman Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, HARMAN, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

152.  Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Harman Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

153.   Pursuant to the terms and conditions of the AeroVanti Harman Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Harman Top Gun Agreement, Plaintiff, HARMAN, made a written request to the Escrow Agent to deliver to Plaintiff, HARMAN, the respective aircraft title documentation for the specified Aircraft, to no avail.

154.   Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Harman Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

155.   Moreover, Plaintiff, HARMAN, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "7".

156.   As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Harman Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, HARMAN, has suffered damages, and continues to suffer damages.

157.   Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant,

AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, HARTMAN, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, ANDREW HUNTER HARMAN, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT VI - FRAUDULENT MISREPRESENTATION[9]

### (HARMAN against AEROVANTI, ALTER-EGO DEFENDANTS and BRITTON-HARR)

Plaintiff, HARMAN, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

158.   This is an action for damages that are within the jurisdiction of this court.

159.   Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

160.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

161.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "90 BC LLC" "Top Gun" Membership were to be held in an escrow account

---

[9] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Harman Top Gun Agreement.

162.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "90 BC LLC" were to be utilized for express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, HARMAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

163.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

164.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Harman Membership Agreement.

165. Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Harman Membership Agreement.

166. The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

167. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Harman Top Gun Agreement.

168. The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Harman Membership Agreement.

169. If Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-

EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Harman Membership Agreement.

170. As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, HARMAN, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, ANDREW HUNTER HARMAN, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT VII - RESCISSION[10]

### (HARMAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, HARMAN, sues Defendant, AEROVANTI AVIATION and BRITTON-HARR, and alleges that:

171. This is an action for damages that are within the jurisdiction of this court.

172. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

---

[10] [10] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

173.  On May 27, 2022, Plaintiff, HARMAN, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Harman Top Gun Agreement"; a copy of the AeroVanti Harman Top Gun Agreement is attached hereto as Exhibit "2".

174.  Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, HARMAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

175.  Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

176.  Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would

induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Harman Membership Agreement.

177. Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Harman Membership Agreement.

178. Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Harman Top Gun Agreement.

179. If Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Harman Membership Agreement.

180. Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital

Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

181.   As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

182. Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Harman Membership Agreement.

183.   In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Harman Membership Agreement.

184. However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the

monies it received from Plaintiff in connection with the AeroVanti Harman Membership Agreement.

185.   Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Harman Membership Agreement.

**WHEREFORE**, Plaintiff, HARMAN, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Harman Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from May 27, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

### COUNT VIII - BREACH OF CONTRACT[11]
### (SULLIVAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, SULLIVAN, sues Defendants, AEROVANTI AVIATION, and BRITTON-HARR, jointly and severally, and alleges that:

186.   This is an action for damages that are within the jurisdiction of this court.

187.   Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

---

[11] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

188.    On May 25, 2022, Plaintiff, SULLIVAN, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Sullivan Top Gun Agreement*"); a copy of the AeroVanti Sullivan Top Gun Agreement is attached hereto as Exhibit "3".

189.    On May 25, 2022, AeroVanti Sullivan Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

190.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Sullivan Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

191.    Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of three million dollars ($3,000,000.00).

192.    Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was

designated to each respective group comprised of twenty (20) individual membership unitholders.

193.  In the instant matter, Plaintiff, SULLIVAN, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "90 BC LLC".

194.  Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, and in consideration of Plaintiff, SULLIVAN, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "90 BC LLC" Top Gun Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Sullivan Top Gun Agreement.

195.  In connection with the "90 BC LLC" Top Gun Membership, and in accordance with the AeroVanti Sullivan Top Gun Agreement, a total of three million dollars ($3,000,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "90 BC LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around May 27, 2022.

196.  In order to induce Plaintiff, SULLIVAN, and other "90 BC LLC" members, into purchasing the respective membership unit(s) for the "90 BC LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Sullivan

Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, SULLIVAN, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

197.   Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, SULLIVAN, and/or any other 90 BC LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, SULLIVAN, and/or any other "90 BC LLC" members, the respective title documentation for the Aircraft, as specified herein.

198.   Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, SULLIVAN, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "90 BC LLC"  were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, SULLIVAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

199.   In connection with the AeroVanti Sullivan Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

200.   In connection with the AeroVanti Sullivan Top Gun Agreement, an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Exclusive Use Aircraft Lease and Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

201.   Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, the funds being held in the respective escrow account on behalf of "90 BC LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, SULLIVAN, and/or other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

202.   In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, SULLIVAN, and/or other "90 BC LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an

independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Sullivan Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, SULLIVAN, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

203.   In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Sullivan Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, SULLIVAN, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

204.    Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "90 BC LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

205.    Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" other than as expressly stated and agreed to in the AeroVanti Sullivan Top Gun Agreement.

206.    Conversely, during the period of May 27, 2022, through and including June 13, 2022, a total span of 17 calendar days, the total amount of three million dollars ($3,000,000.00) that was being held in the respective escrow account on behalf of "90 BC LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

207.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to Arcadia Capital Management, LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO

DEFENDANTS, as were required in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement for the specified Aircraft.

208.   Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, SULLIVAN, to enter into the AeroVanti Sullivan Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

209.   Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

210.   During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant,

AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

211.   Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, SULLIVAN, to enter into the AeroVanti Sullivan Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

212.   During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, SULLIVAN, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, SULLIVAN, nor any other "90 BC LLC" member, having taken any such flight(s) on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

213.   Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Sullivan Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of acquiring the specified Aircraft.

214.   Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Sullivan Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

215.   Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Sullivan Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, SULLIVAN, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

216.   Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Sullivan Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135

217.   Pursuant to the terms and conditions of the AeroVanti Sullivan Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Sullivan Top Gun Agreement,

Plaintiff, SULLIVAN, made a written request to the Escrow Agent to deliver to Plaintiff, SULLIVAN, the respective aircraft title documentation for the specified Aircraft, to no avail.

218.   Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Sullivan Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

219.   Moreover, Plaintiff, SULLIVAN, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "7".

220.   As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Sullivan Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, SULLIVAN, has suffered damages, and continues to suffer damages.

221.   Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, SULLIVAN, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, SULLIVAN, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, and the ALTER-EGO

DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT IX - FRAUDULENT MISREPRESENTATION[12]
### (SULLIVAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiffs, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, and alleges that:

222.    This is an action for damages that are within the jurisdiction of this court.

223.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

224.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

225.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "90 BC LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Sullivan Top Gun Agreement.

---

[12] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

226.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "90 BC LLC" were to be utilized for express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, SULLIVAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

227.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

228.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Sullivan Membership Agreement.

229.     Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO

DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Sullivan Membership Agreement.

230.   The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

231.   Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Sullivan Top Gun Agreement.

232.   The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Sullivan Membership Agreement.

233.   If  Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one

hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Sullivan Membership Agreement.

234.    As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, SULLIVAN, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, JOHN DAVID SULLIVAN, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT X - RESCISSION[13]

### (SULLIVAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, SULLIVAN, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, and alleges that:

235.    This is an action for damages that are within the jurisdiction of this court.

236.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

---

[13] [13] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

237.     On May 25, 2022, Plaintiff, SULLIVAN, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Sullivan Top Gun Agreement"); a copy of the AeroVanti Sullivan Top Gun Agreement is attached hereto as Exhibit "3".

238.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, SULLIVAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

239.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

240.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would

induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Sullivan Membership Agreement.

241.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Sullivan Membership Agreement.

242.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Sullivan Top Gun Agreement.

243.    If  Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Sullivan Membership Agreement.

244.    Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

245.    As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

246.    Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Sullivan Membership Agreement.

247.    In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Sullivan Membership Agreement.

248.    However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Sullivan Membership Agreement.

249.    Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Sullivan Membership Agreement.

250.    As a direct and proximate result of Defendant.

**WHEREFORE**, Plaintiff, SULLIVAN, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Sullivan Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from May 25, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT XI - BREACH OF CONTRACT[14]

### (BRANDMAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, BRANDMAN, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

---

[14] *T.T. International Co., Ltd v. BMP Int', Inc.*, 2022 WL 971950, *10-11 (M.D. Fla. Mar. 31, 2022)

251.     This is an action for damages that are within the jurisdiction of this court.

252.     Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

253.     May 25, 2022, Plaintiff, BRANDMAN, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Brandman Top Gun Agreement*"); a copy of the AeroVanti Brandman Top Gun Agreement is attached hereto as Exhibit "4".

254.     On May 25, 2022, AeroVanti Brandman Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

255.     Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Brandman Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

256.     Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred

fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of three million dollars ($3,000,000.00).

257.    Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders. In the instant matter, Plaintiff, BRANDMAN, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "90 BC LLC".

258.    Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, and in consideration of Plaintiff, BRANDMAN, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "90 BC LLC" Top Gun Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Brandman Top Gun Agreement.

259.    In connection with the "90 BC LLC" Top Gun Membership, and in accordance with the AeroVanti Brandman Top Gun Agreement, a total of three million dollars ($3,000,000.00) was received by Defendant, AEROVANTI

AVIATION, on behalf of "90 BC LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around May 27, 2022.

260.    In order to induce Plaintiff, BRANDMAN, and other "90 BC LLC" members, into purchasing the respective membership unit(s) for the "90 BC LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, BRANDMAN, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

261.    Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Brandman Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, BRANDMAN, and/or any other 90 BC LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, BRANDMAN, and/or any other "90 BC LLC" members, the respective title documentation for the Aircraft, as specified herein.

262.    Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, BRANDMAN, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "90 BC LLC"  were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in

order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, BRANDMAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

263.    In connection with the AeroVanti Brandman Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

264.    In connection with the AeroVanti Brandman Top Gun Agreement, an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Exclusive Use Aircraft Lease and Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

265.    Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, the funds being held in the respective escrow account on behalf of "90 BC LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity process; and/or (ii) to pay for Plaintiff, BRANDMAN, and/or other "90

BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

266.    In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, BRANDMAN, and/or other "90 BC LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Brandman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, BRANDMAN, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

267.    In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Brandman Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, BRANDMAN, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the Aircraft, which upon the respective Escrow Agent's receipt of a

written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

268.    Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "90 BC LLC" were to be disbursed to Defendant, AEROVANTI AVIATION.

269.    Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" other than as expressly stated and agreed to in the AeroVanti Brandman Top Gun Agreement.

270.    Conversely, during the period of May 27, 2022, through and including June 13, 2022, a total span of 17 calendar days, the total amount of three million dollars ($3,000,000.00) that was being held in the respective escrow account on behalf of "90 BC LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

271.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were

used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to Arcadia Capital Management, LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement for the specified Aircraft.

272.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, BRANDMAN, to enter into the AeroVanti Brandman Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto is composite Exhibit "6".

273.    Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

274.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the

funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

275.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, BRANDMAN, to enter into the AeroVanti Brandman Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

276.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, BRANDMAN, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, BRANDMAN, nor any other "90 BC LLC" member, having taken any such flight(s)

on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

277.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Brandman Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of acquiring the specified Aircraft.

278.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Brandman Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

279.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Brandman Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, BRANDMAN, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

280.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Brandman Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

281.     Pursuant to the terms and conditions of the AeroVanti Brandman Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Brandman Top Gun Agreement, Plaintiff, BRANDMAN, made a written request to the Escrow Agent to deliver to Plaintiff, BRANDMAN, the respective aircraft title documentation for the specified Aircraft, to no avail.

282.     Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Brandman Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

283.     Moreover, Plaintiff, BRANDMAN, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "7".

284.     As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Brandman Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, BRANDMAN, has suffered damages, and continues to suffer damages.

285.     Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant,

AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, BRANDMAN, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, BRANDMAN, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT XII - FRAUDULENT MISREPRESENTATION[15]
### (BRANDMAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, BRANDMAN, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

286.    This is an action for damages that are within the jurisdiction of this court.

287.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

288.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

289.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "90 BC LLC" "Top Gun" Membership were to be held in an

---

[15] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Brandman Top Gun Agreement.

290.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "90 BC LLC"  were to be utilized for express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, BRANDMAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

291.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

292.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Brandman Membership Agreement.

293.     Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Brandman Membership Agreement.

294.     The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

295.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Brandman Top Gun Agreement.

296.     The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Brandman Membership Agreement.

297.     If  Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft,

as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Brandman Membership Agreement.

298.    As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, BRANDMAN, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, BRANDMAN, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT XIII - RESCISSION[16]

### (BRANDMAN against AEROVANTI AVIATION and BRITTON-HARR)

Plaintiff, BRANDMAN, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

299.    This is an action for damages that are within the jurisdiction of this court.

---

[16] [16] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

300.     Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

301.     On May 25, 2022, Plaintiff, BRANDMAN, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Brandman Top Gun Agreement"); a copy of the AeroVanti Brandman Top Gun Agreement is attached hereto as Exhibit "4".

302.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, BRANDMAN, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

303.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

304.     Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and

expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Brandman Membership Agreement.

305.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Brandman Membership Agreement.

306.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Brandman Top Gun Agreement.

307.    If Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit

for the "Top Gun" Membership, nor enter into the AeroVanti Brandman Membership Agreement.

308.    Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

309.    As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

310.    Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Brandman Membership Agreement.

311.    In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Brandman Membership Agreement.

312.    However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Brandman Membership Agreement.

313.    Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Brandman Membership Agreement.

**WHEREFORE**, Plaintiff, BRANDMAN, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Brandman Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from May 25, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT XIV - BREACH OF CONTRACT[17]

### (PORTER against AEROVANTI AVIATION and BRITTON-HARR.)

Plaintiff, PORTER, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

314.    This is an action for damages that are within the jurisdiction of this court.

315.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

316.    On May 25, 2022, Plaintiff, PORTER, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Membership Agreement and corresponding Top Gun Addendum to the AeroVanti Membership Agreement (collectively hereinafter, "*AeroVanti Porter Top Gun Agreement*"); a copy of the AeroVanti Porter Top Gun Agreement is attached hereto as Exhibit "5".

317.    On May 25, 2022, AeroVanti Porter Top Gun Agreement was executed by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

318.    Upon information and belief, and at all relevant times hereto, Defendant, AEROVANTI AVIATION, was a defunct limited liability company and was no longer in good standing with the State of Delaware Division of Corporations at the time the AeroVanti Porter Top Gun Agreement was executed on behalf of Defendant, AEROVANTI AVIATION, by Defendant, BRITTON-HARR, as "CEO" of Defendant, AEROVANTI AVIATION.

---

[17]

319.     Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, each respective AeroVanti Elite Air Club "Top Gun" membership was to be comprised of twenty (20) individual membership units, at one hundred fifty thousand dollars ($150,000.00) per membership unit, for a total "Top Gun" membership program amount of three million dollars ($3,000,000.00).

320.     Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, once twenty (20) individual membership units were purchased in connection with the "Top Gun" membership, a "Top Gun" membership name was designated to each respective group comprised of twenty (20) individual membership unitholders. In the instant matter, Plaintiff, PORTER, and in connection with the "Top Gun" Membership, purchased one (1) membership unit for one hundred fifty thousand ($150,000.00) and was designated to be a "Top Gun" membership unitholder of "90 BC LLC".

321.     Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, and in consideration of Plaintiff, PORTER, having agreed to purchase one (1) membership unit in the "Top Gun" Program, Defendant, AEROVANTI AVIATION, represented, and further agreed, that all funds obtained in connection with the "90 BC LLC" Top Gun Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Porter Top Gun Agreement.

322.     In connection with the "90 BC LLC" Top Gun Membership, and in accordance with the AeroVanti Porter Top Gun Agreement, a total of three million dollars ($3,000,000.00) was received by Defendant, AEROVANTI AVIATION, on behalf of "90 BC LLC" and placed in the escrow account of Gilchrist Aviation Law ("*Escrow Agent*") on or around May 27, 2022.

323.     In order to induce Plaintiff, PORTER, and other "90 BC LLC" members, into purchasing the respective membership unit(s) for the "90 BC LLC" Top Gun Membership, and pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, PORTER, and further expressly agreed, to endorse in blank and deliver to the respective Escrow Agent, the aircraft title to the Aircraft, as specified herein.

324.     Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, in the event that Defendant, AEROVANTI AVIATION, failed to comply with the terms and conditions of the AeroVanti Porter Top Gun Agreement, then upon request being made to the Escrow Agent by Plaintiff, PORTER, and/or any other 90 BC LLC members, the respective Escrow Agent, was required to deliver to Plaintiff, PORTER, and/or any other "90 BC LLC" members, the respective title documentation for the Aircraft, as specified herein.

325.     Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, PORTER, and further expressly agreed, that the funds being held in the respective escrow account on behalf of "90 BC LLC"  were to be utilized for the express and limited

purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, PORTER, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

326.    In connection with the AeroVanti Porter Top Gun Agreement, Defendant, AEROVANTI AVIATION, expressly agreed to enter into an aircraft lease and purchase agreement for the specified Aircraft.

327.    In connection with the AeroVanti Porter Top Gun Agreement, an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT; the Exclusive Use Aircraft Lease and Purchase Agreement was executed by Defendant, BRITTON-HARR, as "President" of ALTER-EGO DEFENDANT, AEROVANTI AIRCRAFT.

328.    Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, the funds being held in the respective escrow account on behalf of "90 BC LLC" were only to be disbursed to Defendant, AEROVANTI AVIATION, on an as-needed basis, upon the respective Escrow Agent's receipt of a written certification identifying certain expenses requiring payment that were strictly associated with either: (i) the acquisition and reconditioning of the Aircraft and the conformity

process; and/or (ii) to pay for Plaintiff, PORTER, and/or other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator.

329.   In connection with any such expenses directly associated with the flight(s) taken by Plaintiff, PORTER, and/or other "90 BC LLC" members on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, and pursuant to the express terms and conditions of the AeroVanti Porter Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, PORTER, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses requiring payment for such flight(s), which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

330.   In like manner, and in connection with any such expenses directly associated with the acquisition, reconditioning and Part 135 conformity of the Aircraft, and pursuant to the express terms and conditions of the AeroVanti Porter Top Gun Agreement, Defendant, AEROVANTI AVIATION, represented to Plaintiff, PORTER, and further expressly agreed to provide the respective Escrow Agent with a written certification identifying the specified expenses that require payment as it directly relates to the acquisition, reconditioning and Part 135 conformity of the

Aircraft, which upon the respective Escrow Agent's receipt of a written certification thereof, the Escrow Agent was to make any such disbursement from the funds being held in the respective escrow account on behalf of "90 BC LLC" to Defendant, AEROVANTI AVIATION, for the specified amount stated within the written certification(s).

331.    Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, upon completion of the acquisition, reconditioning and Part 135 conformity of the Aircraft by Defendant, AEROVANTI AVIATION, any such funds remaining in the respective escrow account on behalf of "90 BC LLC" were to be disbursed to Defendant, AEROVANTI AVIATION. Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, no such amounts were to be disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" other than as expressly stated and agreed to in the AeroVanti Porter Top Gun Agreement.

332.    Conversely, during the period of May 27, 2022, through and including June 13, 2022, a total span of 17 calendar days, the total amount of three million dollars ($3,000,000.00) that was being held in the respective escrow account on behalf of "90 BC LLC" was disbursed from the respective escrow account to Defendant, AEROVANTI AVIATION.

333.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were

used for the purpose of acquiring the respective Aircraft, as evidenced by no such lease payments having been made to Arcadia Capital Management, LLC by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, as were required in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement for the specified Aircraft.

334.    Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, PORTER, to enter into the AeroVanti Porter Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to make the required Aircraft lease payments in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto is composite Exhibit "6".

335.    Equally important, and upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS.

336.    During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the

funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of reconditioning the respective Aircraft, as evidenced by Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS, failure to insure and properly maintain the specified Aircraft.

337. Upon information and belief, it has since been discovered that prior to Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having induced Plaintiff, PORTER, to enter into the AeroVanti Porter Top Gun Agreement, the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default for Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and/or the ALTER-EGO DEFENDANTS having failed to insure and properly maintain the specified Aircraft in accordance thereof; a copy of the Notice of Default Letter(s) are attached hereto as composite Exhibit "6".

338. During the period of May 27, 2022, through and including June 13, 2022, no such amounts disbursed to Defendant, AEROVANTI AVIATION, from the funds being held in the respective escrow account on behalf of "90 BC LLC" were used for the purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, PORTER, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator, as evidenced by Plaintiff, PORTER, nor any other "90 BC LLC" member, having taken any such flight(s) on

either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator during such time.

339.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Porter Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of acquiring the specified Aircraft.

340.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Porter Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of reconditioning the specified Aircraft in order to meet the "fleet" standards of Defendant, AEROVANTI, and further conform with Part 135 requirements.

341.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Porter Top Gun Agreement by failing to use the funds being held in the respective escrow account on behalf of "90 BC LLC" for the express purpose of paying the specified expenses directly associated with the flight(s) taken by Plaintiff, PORTER, and/or other 90 BC LLC members flight(s), on either the respective Aircraft, an AeroVanti fleet aircraft, or an aircraft operated by an independent third-party charter flight operator.

342.    Defendant, AEROVANTI AVIATION, materially breached the AeroVanti Porter Top Gun Agreement by further failing to insure and maintain the specified Aircraft as required by Part 135.

343.    Pursuant to the terms and conditions of the AeroVanti Porter Top Gun Agreement, as a result of Defendant, AEROVANTI AVIATION, having failed to comply with the terms and conditions of the AeroVanti Porter Top Gun Agreement, Plaintiff, PORTER, made a written request to the Escrow Agent to deliver to Plaintiff, PORTER, the respective aircraft title documentation for the specified Aircraft, to no avail. Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, materially breached the AeroVanti Porter Top Gun Agreement by failing to deliver to the Escrow Agent, the respective aircraft title documentation for the specified Aircraft, as evidenced by no such title documentation for the specified Aircraft ever having been delivered to Escrow Agent.

344.    Moreover, Plaintiff, PORTER, previously sent Defendant, AEROVANTI AVIATION, Defendant, BRITTON-HARR, and the ALTER-EGO DEFENDANTS, a Notice of Incurable Default and Formal Demand Letter on April 20, 2023, to no avail; a copy of the Formal Demand Letter is attached hereto as Exhibit "7".

345.    As a direct and proximate result of Defendant, AEROVANTI AVIATION, and Defendant, BRITTON-HARR, having materially breached the AeroVanti Porter Top Gun Agreement beyond the point of any such ability to cure, Plaintiff, PORTER, has suffered damages, and continues to suffer damages.

346.    Moreover, due to Defendant, BRITTON-HARR, operating Defendant, AEROVANTI AVIATION, Defendant, AEROVANTI AIRCRAFT, Defendant, AEROVANTI, and each of the ALTER-EGO DEFENDANTS as a single business entity Plaintiff, PORTER, asserts this claim against all the Alter Ego Defendants.

**WHEREFORE**, Plaintiff, PORTER, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

### COUNT XV - FRAUDULENT MISREPRESENTATION[18]

### (PORTER against AEROVANTI, the ALTER EGO DEFENDANTS and BRITTON-HARR.)

Plaintiff, PORTER, sues Defendants, AEROVANTI, the ALTER-EGO DEFENDANTS, and BRITTON-HARR, jointly and severally, and alleges that:

347.    This is an action for damages that are within the jurisdiction of this court.

348.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

349.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further advertised and promoted the "top gun" membership as being a limited AeroVanti Elite Air Club membership ("*Top Gun Membership*").

350.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained in connection with the "90 BC LLC" "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" for the purpose of maintaining

---

[18] *Metropolitan Life Ins. Co. v. Liebowitz*, 2022 WL 833635, *9 (M.D. Fla. Mar. 21, 2022);

and disbursing the respective funds of "90 BC LLC" in accordance with the express terms of the AeroVanti Porter Top Gun Agreement.

351.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that the funds being held in the respective escrow account on behalf of "90 BC LLC" were to be utilized for express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, PORTER, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

352.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

353.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Porter Membership Agreement.

354.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Porter Membership Agreement.

355.    The representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiff.

356.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Porter Top Gun Agreement.

357.    The false and fraudulent representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS were material to Plaintiff's decision to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Porter Membership Agreement.

358.    If Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft,

as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit for the "Top Gun" Membership, nor enter into the AeroVanti Porter Membership Agreement.

359.    As a direct and proximate result of the false and fraudulent representations made to Plaintiff by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff, PORTER, has suffered damages, and continues to suffer damages.

**WHEREFORE**, Plaintiff, PORTER, demands judgment for damages against Defendants, AEROVANTI AVIATION, BRITTON-HARR, AEROVANTI, and the ALTER-EGO DEFENDANTS, jointly and severally, and for costs, and attorney's fees, and other such relief that this Honorable Court deems just and proper.

## COUNT XVI - RESCISSION[19]

### (PORTER against AEROVANTI AVIATION and BRITTON-HARR.)

Plaintiff, PORTER, sues Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, and alleges that:

360.    This is an action for damages that are within the jurisdiction of this court.

---

[19] *Perna v. Am. Campus Cmtys, Inc.*, 2022 WL 1689083, *3-5 (M.D. Fla. May 26, 2022);

361.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

362.    On May 25, 2022, Plaintiff, PORTER, and Defendant, AEROVANTI AVIATION, entered into the AeroVanti Porter Top Gun Agreement"); a copy of the AeroVanti Porter Top Gun Agreement is attached hereto as Exhibit "5".

363.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiff that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiff, PORTER, and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

364.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, further represented to Plaintiff that an Exclusive Use Aircraft Lease and Purchase Agreement was previously entered into for the specified Aircraft on November 18, 2021, between Arcadia Capital Management, LLC, as lessor, and one of the ALTER-EGO DEFENDANTS, AEROVANTI AIRCRAFT, as lessee.

365.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiff with the purpose and

expectation that the representations would be relied upon by Plaintiff and would induce Plaintiff to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Porter Membership Agreement.

366.    Plaintiff, in justifiable reliance upon the representations made by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, agreed to purchase one (1) membership unit for the "Top Gun" Membership and enter into the AeroVanti Porter Membership Agreement.

367.    Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS knew these representations were false and fraudulent when they were made to Plaintiff, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS having induced Plaintiff to enter into the AeroVanti Porter Top Gun Agreement.

368.    If  Plaintiff had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS to Plaintiff, then Plaintiff would not have paid one hundred fifty thousand dollars ($150,000.00) to purchase one (1) membership unit

for the "Top Gun" Membership, nor enter into the AeroVanti Porter Membership Agreement.

369.    Moreover, upon information and belief, it has also since been discovered that the respective Aircraft has since been repossessed by Arcadia Capital Management, LLC in accordance with the Exclusive Use Aircraft Lease and Purchase Agreement, and as a result, the Aircraft is no longer being leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR.

370.    As a result of Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, having made false and fraudulent statements to Plaintiff, and Plaintiff having justifiably relied thereon to Plaintiffs detriment, and further, due to the specified Aircraft no longer being in the leased, owned, operated or in the possession of Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, whereby making both the purpose of Plaintiff's funds, as well as Plaintiff's actual ability to use the specified Aircraft impossible.

371.    Upon discovering the acts of fraud, deceit and/or omissions by AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, Plaintiff sought to rescind the AeroVanti Porter Membership Agreement.

372.    In doing so, Plaintiff notified Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR of such rescission and requested the return of the funds delivered to Defendant, AEROVANTI, the ALTER-

EGO DEFENDANTS, and/or Defendant, BRITTON-HARR in connection with the AeroVanti Porter Membership Agreement.

373.    However, Defendant, AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR have failed and further refused to return the monies it received from Plaintiff in connection with the AeroVanti Porter Membership Agreement.

374.    Plaintiff has no adequate legal remedy at law except for a rescission of the AeroVanti Porter Membership Agreement.

**WHEREFORE**, Plaintiff, PORTER, respectfully demands a judicial declaration by this Honorable Court in its favor and against Defendants, AEROVANTI AVIATION and BRITTON-HARR, jointly and severally, for rescission of the AeroVanti Porter Top Gun Agreement *ab initio*, the return of the $150,000.00 previously paid by Plaintiff to AEROVANTI, the ALTER-EGO DEFENDANTS, and/or Defendant, BRITTON-HARR, plus applicable interest on the funds from May 25, 2022 through and including May 19, 2023, and to enter such other orders and/or grant such further relief as this Honorable Court deems just and proper under the circumstances.

### COUNT XVII - AIDING AND ABETTING FRAUD[20]
### (PLAINTIFFS against RICKETTS)

Plaintiffs, sues Defendant, RICKETTS, and allege that:

---

[20] Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1214 (11th Cir. 2018).

375.    This is an action for damages that are within the jurisdiction of this court.

376.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

377.    As specifically described herein, Defendant, BRITTON-HARR, and Defendant, AEROVANTI, through its agents and network of ALTER-EGO DEFENDANTS, made false and fraudulent representations to Plaintiffs in connection with specified Aircraft associated with the "Top Gun" Membership.

378.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, had knowledge that false and fraudulent representations were made to Plaintiffs in order to induce Plaintiffs to purchase membership units and further enter into the AeroVanti Membership Agreement.

379.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, knowingly aided and abetted in false and fraudulent representations having been made to Plaintiffs.

380.    Moreover, Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, helped solicit and further advertise the "Top Gun" Membership to potential new members, including Plaintiffs, in order to induce helped prepare the

marketing materials that were provided to Plaintiffs to induce Plaintiffs to purchase membership units and further enter into the AeroVanti Membership Agreement.

381.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, also assisted in the inducement of the purchase of membership units for the "Top Gun" Membership by orchestrating the appearance of Defendant, AEROVANTI, and its affiliated network of ALTER-EGO DEFENDANTS, maintaining a significant "fleet" of aircrafts, when, in reality, the "fleet" of aircrafts was simply a facade.

382.    As a direct and proximate result of the actions of Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, Plaintiffs were damaged and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, RICKETTS, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.

### COUNT XVIII - NEGLIGENT MISREPRESENTATION[21]
### (PLAINTIFFS against RICKETTS)

Plaintiffs, sue Defendant, RICKETTS, and allege that:

383.    This is an action for damages that are within the jurisdiction of this court.

---

[21] *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1312 (N.D. Fla. 2003)

384.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

385.    At all times relevant hereto, Defendant, RICKETTS, was, and upon information and belief, currently still is the Vice President of Sales for Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS.

386.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, solicitated new potential members, including Plaintiffs, to purchase a "Top Gun" Membership.

387.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiffs that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiffs and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

388.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO

DEFENDANTS, made these representations to Plaintiffs with the purpose and expectation that the representations would be relied upon by Plaintiffs and would induce Plaintiffs to purchase membership units for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

389.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit for the "Top Gun" Membership, and five (5) membership units in total, and each enter into the AeroVanti Membership Agreement, respectively.

390.    The representations made to Plaintiffs by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiffs.

391.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiffs, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO

DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreements, respectively.

392.    The false and fraudulent representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision one (1) membership unit for the "Top Gun" Membership, and five (5) membership units in total, and enter into the AeroVanti Membership Agreement, respectively.

393.    If  Plaintiffs had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00) nor enter into the AeroVanti Membership Agreement, respectively.

394.    Moreover, Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to potential new members, including

Plaintiff, that Defendant, AEROVANTI, had a significant "fleet" of aircrafts to satisfy member demand and further an in effort to "keep Defendant, AEROVANTI's member-to-aircraft ratio lower than the industry average without sacrificing any of the luxury one expects with private travel".

395.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiffs with the purpose and expectation that the representations would be relied upon by Plaintiffs and would induce Plaintiff to each purchase one (1) membership unit, five (5) membership units in total,  for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

396.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership, and further enter into the AeroVanti Membership Agreement, respectively.

397.    Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiff, as Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, did not have more than three (3)

aircrafts in its fleet and that were deemed to be airworthy, prior to Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreement, respectively.

398.    The false and fraudulent representations made by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership and further enter into the AeroVanti Membership Agreement, respectively.

399.    If Plaintiffs had known that known that Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, only had three (3) aircrafts in its fleet and that were deemed to be airworthy, as was represented by Defendant, RICKETTS, in his role as Vice President of Sales on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00), nor enter into the AeroVanti Membership Agreement, respectively.

400.    As a direct and proximate result of the false and fraudulent representations made to Plaintiffs by Defendant, AEROVANTI, and its network of

ALTER-EGO DEFENDANTS, Plaintiffs have suffered damages, and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, RICKETTS, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.

## COUNT XIX - NEGLIGENT MISREPRESENTATION[22]
### (PLAINTIFFS against DE POL)

Plaintiffs, sues Defendant, DE POL, and allege that:

401.    This is an action for damages that are within the jurisdiction of this court.

402.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

403.    At all times relevant hereto, Defendant, DE POL, was the Chief Operating Officer for Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS.

404.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, controlled and/or managed the solicitation of new potential members, including Plaintiffs, to purchase a "Top Gun" Membership.

---

[22] *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1312 (N.D. Fla. 2003)

405.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to Plaintiffs that that all funds obtained for the "Top Gun" Membership were to be held in an escrow account established on behalf of "90 BC LLC" and were to be utilized for the express and limited purposes of: "(i) acquiring and reconditioning a specified Piaggio P. 180 Avanti Aircraft, SN 1092, FAA Registration No. N290BC (the "*Aircraft*") in order to meet the fleet standards of Defendant, AEROVANTI, and further conform with Part 135 requirements; and (ii) to further pay for both Plaintiffs and other "90 BC LLC" members, use of the Aircraft, use of an AeroVanti fleet aircraft, or use of an aircraft operated by an independent third-party charter flight operator".

406.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiffs with the purpose and expectation that the representations would be relied upon by Plaintiffs and would induce Plaintiffs to purchase membership units for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

407.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit for the "Top Gun" Membership,

and five (5) membership units in total, and each enter into the AeroVanti Membership Agreement, respectively.

408.    The representations made to Plaintiffs by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were false when they were made to Plaintiffs.

409.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiffs, as the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default prior to Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreements, respectively.

410.    The false and fraudulent representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision one (1) membership unit for the "Top Gun" Membership, and five (5) membership units in total, and enter into the AeroVanti Membership Agreement, respectively.

411.    If Plaintiffs had known that the Exclusive Use Aircraft Lease and Purchase Agreement in connection with specified Aircraft was already in default, or that the funds received for the "Top Gun" Membership would not be utilized for the express and limited purposes of acquiring and reconditioning the specified Aircraft, as was represented by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00) nor enter into the AeroVanti Membership Agreement, respectively.

412.    Moreover, Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, represented to potential new members, including Plaintiff, that Defendant, AEROVANTI, had a significant "fleet" of aircrafts to satisfy member demand and further an in effort to "keep Defendant, AEROVANTI's member-to-aircraft ratio lower than the industry average without sacrificing any of the luxury one expects with private travel".

413.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, made these representations to Plaintiffs with the purpose and expectation that the representations would be relied upon by Plaintiffs and would

induce Plaintiff to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership and enter into the AeroVanti Membership Agreement, respectively.

414.    Plaintiffs, in justifiable reliance upon the representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, agreed to each purchase one (1) membership unit, five (5) membership units in total, for the "Top Gun" Membership, and further enter into the AeroVanti Membership Agreement, respectively.

415.    Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, knew or should have known that these representations were false and fraudulent when they were made to Plaintiff, as Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, did not have more than three (3) aircrafts in its fleet and that were deemed to be airworthy, prior to Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, having induced Plaintiffs to enter into the AeroVanti Top Gun Agreement, respectively.

416.    The false and fraudulent representations made by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, were material to Plaintiffs' decision to each purchase one (1) membership unit, five (5) membership

units in total, for the "Top Gun" Membership and further enter into the AeroVanti Membership Agreement, respectively.

417.    If Plaintiffs had known that known that Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, only had three (3) aircrafts in its fleet and that were deemed to be airworthy, as was represented by Defendant, DE POL, in his role as Chief Operating Officer on behalf of Defendant, AEROVANTI, and through its agents and network of ALTER-EGO DEFENDANTS, to Plaintiffs, then Plaintiffs would not have each paid one hundred fifty thousand dollars ($150,000.00) to each purchase one (1) membership unit for the "Top Gun" Membership, for a total amount of seven hundred fifty thousand dollars ($750,000.00), nor enter into the AeroVanti Membership Agreement, respectively.

418.    As a direct and proximate result of the false and fraudulent representations made to Plaintiffs by Defendant, AEROVANTI, and its network of ALTER-EGO DEFENDANTS, Plaintiffs have suffered damages, and continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, DE POL, for damages, costs, interest, prejudgment interest, and such other relief as the Court deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial as to all issues so triable.

By:   **/s/ Ryan C. Wagner**

Ryan C. Wagner, Esq.
Florida Bar No. 109313
**WLG FIRM, PLLC**
Attorneys for Plaintiffs
110 SE 6th Street, Suite 1700
Fort Lauderdale, FL 33301
Tel: (954) 271-2424
Email: ryan@WLGFIRM.com

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

*[SIGNATURE PAGE(S) AND EXHIBIT(S)
TO IMMEDIATELY FOLLOW]*

## <u>VERIFICATION OF COMPLAINT</u>

I, LEE BRADLEY SMITH, am a resident of the State of Florida, and am acting in my corporate capacity as an authorized representative of ROYAL AGMBR, LLC, a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Lee Bradley Smith, as an authorized representative
of Royal AGMBR, LLC, as *Co-Plaintiff*

State of FLORIDA        )
County of WALTON       )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared LEE BRADLEY SMITH, who hereby certifies that he is acting in his corporate capacity as an authorized representative of ROYAL AGMBR, LLC, and whom is authorized to execute and deliver this Verification of Complaint on behalf of ROYAL AGMBR, LLC, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

_____        _____
Name of Notary Public                              Signature of Notary Public

My Commission Expires:        

Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023

120

## VERIFICATION OF COMPLAINT

I, ANDREW HUNTER HARMAN, am a resident of the State of Florida, and am a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Andrew Hunter Harman, as *Co-Plaintiff*

State of FLORIDA      )
County of WALTON      )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared ANDREW HUNTER HARMAN, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

_____
Name of Notary Public

_____
Signature of Notary Public

My Commission Expires:



Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023

## **VERIFICATION OF COMPLAINT**

I, MATTHEW A. BRANDMAN, am a resident of the State of Florida, and am a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Matthew A. Brandman, as *Co-Plaintiff*

State of FLORIDA            )
County of WALTON       )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared MATTHEW A. BRANDMAN, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

Ryan C. Wagner
Name of Notary Public

Signature of Notary Public

My Commission Expires:

Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023

## VERIFICATION OF COMPLAINT

I, JOHN DAVID SULLIVAN, am a resident of the State of Florida, and am a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____
John David Sullivan, as *Co-Plaintiff*

State of FLORIDA )
County of WALTON )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared JOHN DAVID SULLIVAN, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

Ryan C. Wagner                               _____
Name of Notary Public                          Signature of Notary Public

My Commission Expires:



Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023

## **VERIFICATION OF COMPLAINT**

I, REGAL RUSSELL PORTER, II, am a resident of the State of Florida, and am a Co-Plaintiff in the above captioned action. I have read the foregoing Verified Complaint and pursuant to 28 U.S.C.§ 1746(2) declare under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge and belief.

By: _____

Regal Russell Porter, II, as *Co-Plaintiff*

State of FLORIDA        )
County of WALTON        )

I HEREBY CERTIFY that on this day, before me, an officer duly qualified to take acknowledgments, personally appeared REGAL RUSSELL PORTER, II, and who is personally known to me. WITNESS my hand and official seal in the County and State last aforesaid this May 15, 2023.

_Ryan C. Wagner_
Name of Notary Public

_____
Signature of Notary Public

My Commission Expires:



Notary Public State of Florida
Ryan C Wagner
My Commission GG 915046
Expires 09/19/2023